SOUTHERN ICE & COAL COMPANY *et al. v.* HUGH M. ALLEY
*et al.*

(*Nashville.*   December Term, 1912.)

1. **CONDITIONAL SALES.** Summary remedy provided by
   statute does not interfere with chancery jurisdiction to
   enforce seller's lien.

   The statute (Acts 1889, ch. 81), providing, by advertisement and
   sale of the property, a summary remedy for the seller in a
   conditional sale of personalty, with title retained to secure the
   purchase price, merely affords an additional remedy, and does
   not interfere with the chancery jurisdiction, existing before
   said statute, to entertain a bill to enforce the lien and protect
   the rights of the parties to such contracts. (*Post, pp.* 177-180.)

   Code cited and construed:  Sec. 3666, *et seq.* (S.).

   Acts cited and construed:  Acts 1889, ch. 81.

   Cases cited and approved:  Gambling v. Read, Meigs, 284; Bank
   v. Vandyck, 4 Heis., 617; Meagher v. Hollenberg, 9 Lea, 392.

2. **SAME.** Same.  Summary remedy must be strictly pursued.
   The summary remedy provided in the conditional sale statute
   (Acts 1889, ch. 81), when used, must be strictly pursued, by
   retaking possession by consent of the purchaser or by process
   of law, so that the respective rights of both parties may be
   fully protected and enforced. (*Post, pp.* 179, 180.)

   Code cited and construed:  Sec. 3666, *et seq.* (S.).

   Acts cited and construed:  Acts 1889, ch. 81.

   Cases cited and approved:  Cowan v. Manufacturing Co., 92 Tenn.,
   376; Lieberman v. Puckett, 94 Tenn., 274; Case v. Watson, 122
   Tenn., 148.

---

*The authorities on the question of partition of an estate by
**entireties** are collated in notes in 30 L. R. A., 335 and 42 L. R. A.
(N. S.), 98.

**3. PARTITION.** Husband and wife as owners by the entireties may, in anticipation of divorce or thereafter, agree by parol for a partition or a sale for partition of proceeds.

Where a husband and wife owned land as tenants by the entireties, it is entirely competent for them, after they become divorced, or pending the divorce suit and in settlement of the wife's claim for alimony, to agree to a parol partition thereof, and that the land be sold for partition of the proceeds between them. (*Pos' pp.* 176, 180, 181.)

**4. SAME. Same.** Such parol agreement for partition of such land operates as an equitable conversion, when.

The parol agreement for the sale of the land for partition, as stated in the third headnote, operates as an equitable conversion of the realty into money. (*Post, p.* 181.)

**5. SAME. Same. Same.** Lien enforceable in chancery is created by written agreement for proceeds of partition sale to be paid to creditor, when.

Where a husband and wife, owning land as tenants by the entireties, agreed between themselves to sell the land and make equal division of the proceeds in settlement of the wife's claim for alimony in a pending divorce suit, and that the proceeds should be paid by the purchaser in checks in equal amounts; and thereafter, the husband entered into a written agreement with his creditor, reciting the aforesaid agreement between himself and his wife, and stipulating that, in order to secure the creditor, the check, to be made payable to him as aforesaid, should be made payable to a certain person as trustee for the creditor, it was *held* that such agreement with the creditor fixed a lien on the husband's share of the proceeds of the land, when sold, for the payment of the creditor's debt, and such lien is enforceable by bill in chancery, especially where the debtor refuses to make the sale as agreed. (*Post, pp.* 176, 177, 181-183.

Cases cited and approved: Eskridge v. McClure, 2 Yerg., 84; Osborne v. Royer, 1 Lea, 217; McGuffey v. Johnson, 9 Lea, 555; Allison v. Pearce (Tenn. Chy. App.), 59 S. W., 192; Williams v. Vanderbilt, 145 Ill., 238; Daggett v. Rankin, 31 Cal., 321.

Ice & Coal Co. v. Alley.

Cases cited and distinguished:  Gilliam v. Esselman, 5 Sneed, 86;
Langley v. Vaughn, 10 Heis., 553.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.
—JOHN ALLISON, Chancellor.

NORMAN FARRELL, JR., for complainants.

E. A. PRICE and DOUGLAS & NORVELL, for defendants.

MR. JUSTICE LANSDEN delivered the opinion of the
Court.

The chancellor sustained a demurrer to the original
and amended bills, and the complainants have appealed
and assigned errors.  The bills show that the ice com-
pany on August 23, 1911, bought from Alley certain
personal property for the consideration of $1,000.  On
the same day it sold the same property to Alley at the
same price, and the parties entered into a written agree-
ment by which the title to the property was retained
in the ice company "while said note remains unpaid,"
and it was agreed that this "conditional sale should
become absolute upon payment of said note, but, if it
is not paid at maturity, this conditional sale shall be
of no effect, and we shall be entitled to immediate pos-
session of said property."

On November 17, 1911, Alley executed a paper to
Shinkle, trustee for the ice company, which, taken in

connection with the bill, shows that Alley and his wife were the owners of certain real estate as tenants by the entireties, and had agreed upon a sale of the property and an equal division of the proceeds between them in settlement of the wife's claim for alimony in a divorce suit then pending, and that the proceeds should be paid by the purchaser of the land, when sold, in checks of equal amounts to Alley and his wife, after deducting certain prior liens existing upon the property. The agreement then stipulates: "Now, it further appearing that Hugh M. Alley is indebted to the Southern Ice & Coal Company in the further sum of about $1,000 and desires to secure the payment of the same, it is agreed by the said Hugh M. Alley that the check made payable by the purchaser of the above-described property to him be made payable to Chas. Shinkle, trustee for the Southern Ice & Coal Company, so as to secure the said company for the latter amount."

This agreement was entered into for the purpose of securing an extension of time on the conditional sales note, and of affording to the ice company additional security for the payment of the note.

The bill charges with respect to this last instrument, that it was the expectation and purpose of all the parties that the land would be sold within a very short time after the agreement was made, but that Alley had declined to make a sale, although he had received a written offer for the land at the price of $3,000. It is charged that the complainants, having waited a reasonable time for Alley to sell the property, are now entitled

to come into court and have enforced the conditional sale contract of the personalty, and "the lien or trust in said land enforced by a sale of the personalty and the land, and the proceeds applied to their note."

It was further charged that the complainant had never disturbed Alley in possession and use of the personal property covered by the contract of conditional sale, nor had it previously sought to enforce its rights thereunder, that Alley was still in the possession of the personalty, and that it was wholly insufficient to pay the note, or any considerable portion thereof. It was alleged that Alley was wholly insolvent, and would, unless restrained, dispose of and incumber the real estate to the irreparable injury of complainant. The bill prayed for a judgment on the note, with interest, and that the land be sold and the proceeds applied to the decree on the note, but that, previous to the sale of the land, whatever personalty still exists in the hands of Alley and embraced in the contract of conditional sale be sold, and the proceeds of the sale first credited on the judgment on the note.

Various grounds of demurrer were assigned, but they raised only two general questions, which, taken together, go to the entire bill.

The first question made is that a court of chancery has no jurisdiction to enforce a contract of conditional sale of personalty, because chapter 81 of the Acts of 1889 provides an exclusive method of procedure, and because, the bill having prayed for a decree on the note,

the complainant thereby waived all right to the personalty under the contract of conditional sale; and, second, that the agreement with respect to the realty is a mere personal understanding, which neither conveys the land nor fixes a lien on it in favor of the complainant.

That a court of equity has jurisdiction to entertain the bill in this case is settled beyond controversy, unless the act of 1889 affords an exclusive remedy to both the conditional vendor and vendee. *Gambling* v. *Read*, Meigs, 284; *Bank* v. *Vandyck*, 4 Heisk., 617; *Meaghei* v. *Hollenberg*, 9 Lea, 392. Each of the foregoing cases is a case exemplifying the exercise of equity jurisdiction for the relief of the parties to a contract of conditional sale, and is direct authority in favor of the jurisdiction of the chancery court in such a case, the statute aside. Those cases were determined before the passage of chapter 81, Acts of 1889, and, of course, were decided with reference to the rights of the parties to such a contract under the general law. They establish the principle that while such a sale is not a mortgage, and the title to personal property does not pass from the conditional vendor to the vendee, still it is in the nature of a mortgage, and is nothing more than a lien retained as a provision for the security of the payment of the purchase money.

Chapter 81, Acts of 1889 (Shannon's Code, sec. 3666, *et seq.*), was intended to regulate proceedings upon the part of the conditional vendor after he has regained possession of the property on account of the failure of the conditional vendee to pay the purchase price at

maturity.  We think this is manifest upon a casual read-
ing of the statute.  It provides a summary remedy for
the seller by advertisement and sale of the property,
for the purpose of enforcing his lien secured under the
contract.  This statute also recognizes that the interest
of the conditional vendor in the property, after he has
regained possession of it, is only that interest which
this court had declared he possessed previous to the
passage of the act.  It does not provide that a failure
upon the part of the conditional vendee to pay the pur-
chase price at maturity should terminate his rights in
the property and vest the conditional vendor with a
perfect title after he has regained possession, but, on
the contrary, it expressly and distinctly sets out the
method of procedure which the conditional vendor must
pursue in order to bring the property to a sale for the
payment of his debt.  Its provisions must be strictly
pursued.  *Case* v. *Watson*, 122 Tenn., 148, 122 S. W.,
86, 974.  It contemplates two cases, one where the ven-
dor retakes possession by the consent of the purchaser,
and one where it is necessary to regain possession by
process of law in the absence of consent.  *Lieberman* v.
*Puckett*, 94 Tenn., 274, 29 S. W., 6.  It recognizes that
both the seller and the purchaser have an interest in
the property, and it makes provision for the full protec-
tion and enforcement of their respective rights.  *Cowan*
v. *Singer Mfg. Co.*, 92 Tenn., 376, 21 S. W., 663.

It may be added that the statute recognizes that the
purchaser has an interest in the property after the sel-
ler regains possession and in its proceeds after it is sold

under the terms of the act. These considerations exclude the idea that the seller is forced to his election to affirm or disaffirm the sale when he attempts to collect the purchase money. In our cases before the statute, as well as since, it has been held that the purchaser is entitled to the surplus proceeds arising out of a sale of the property by the seller, or by the court, after possession has been regained. This naturally follows from the holding that the contract of conditional sale is merely a security of the seller for the payment of the purchase price.

The act of 1889 merely affords an additional remedy to the seller, which he can pursue at his election; but it does not interfere with the jurisdiction of a court of equity to enforce the lien and protect the rights of the parties.

These principles having been determined by our own cases, we cannot consider authorities from other States cited by counsel for defendant. Whether our decisions are in harmony with the weight of authority or not, the rule established by them has been in force so long that we decline to consider their relative weight with those of other jurisdictions.

We are further of opinion that the chancellor was in error in sustaining the demurrer to that portion of the bill which sought a sale of the real estate to enforce complainant's lien, evidenced by the written agreement of the parties set out in this opinion. It is shown that Mr. and Mrs. Alley owned the land in controversy as tenants by the entireties. They became divorced, and

agreed between themselves that the land should be sold and the proceeds partitioned between them in severalty, share and share alike. After this agreement was made between Alley and his wife, he executed the agreement set out above for the benefit of complainant.

It was entirely competent for Alley and wife to agree to a parol partition of the lot, as well as to agree that the lot should be sold for a partition of the proceeds. This agreement was an equitable conversion of the realty into money. Therefore this case is controlled by *McGuffey* v. *Johnson*, 9 Lea, 555, and *Allison* v. *Pearce* (Tenn. Ch. App.), 59 S. W., 192, and not *Langley* v. *Vaughn*, 10 Heisk., 553, and *Gilliam* v. *Esselman*, 5 Sneed, 86.

When the last two cases are limited to the points decided, and confined to the facts stated in the opinions, we have no disposition to disagree with them. Upon their facts they are rightly decided. But we do not agree to the general proposition, stated in those cases, that a note given for borrowed money, specifying on its face that it was to be a lien on described real estate, is ineffectual to secure such lien. This doctrine is contrary to the weight of authority elsewhere, and to later decisions of this court, notably *Osborne* v. *Royer*, 1 Lea, 217, as well as the earlier case of *Eskridge* v. *McClure*, 2 Yerg., 84. The general doctrine of equity in respect of liens arising from express contract of the parties is thus stated by Mr. Pomeroy at section 1235 of his work on Equity Jurisprudence:

"The doctrine may be stated in its most general form

that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers, or encumbrancers with notice."

The foregoing text is quoted in *Williams* v. *Vanderbilt*, 145 Ill., 238, 34 N. E., 476, 21 L. R. A., 489, 36 Am. St. Rep., 486, and is approved and almost literally quoted in the text of 25 Cyc., p. 665, and is abundantly supported by the numerous cases cited in the notes of that work. A much-quoted case upon this subject is *Daggett* v. *Rankin*, 31 Cal., 321, in which Chief Justice Currey used the following language:

"The doctrine seems to be well established that an agreement in writing to give a mortgage, or a mortgage defectively executed, or an imperfect attempt to create a mortgage, or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity, or a specific [equitable] lien on the property intended to be mortgaged. The maximum of equity upon which this doctrine rests is that equity looks upon things agreed to be done as actually performed; the true meaning of which is that equity will treat the subject-matter, as to collateral consequences and incidents, in the same manner as if the final acts, contemplated by

the parties, had been executed exactly as they ought to have been."

Applying the foregoing test to the case in hand, it is manifest that the instrument of writing under consideration fixes a lien upon the proceeds of the real estate when sold for the payment of the complainants' debt under the terms of the instrument. Alley indicates an intention to make the funds arising out of the sale of his interest in the real estate a security for complainants' debt, and promises to transfer his interest in the proceeds of the sale to the complainant, by directing that the check to be made to him should be made to the trustee for complainant, and these considerations satisfy every test of the lien.

The right of complainant to have his debt paid out of the funds assigned for that purpose cannot be defeated by the refusal of Alley to sell, or permit the property sold, to realize the fund. Equity looks upon the sale as having already been made, because Alley has agreed in writing that the sale should be made, and it will treat the land, so far as the collateral consequences and incidents attending upon a sale of it in order to realize the money are concerned, in the same manner as if the "final acts contemplated by the parties had been executed exactly as they ought to have been"— that is to say, the court will order the land sold, and will impound the proceeds, and apply them to the payment of complainant's debt.

The result is the decree of the chancellor is reversed, and this case remanded for further proceedings in accordance with this opinion.