# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

---

### KNOXVILLE, SEPTEMBER TERM, 1916.

---

*(Continued from Volume 136.)*

---

THOMAS & TURNER *v.* NATIONAL CONSERVATION EXPO-
SITION CO. *et al.*

M. F. ROURKE CO. *et al. v.* SAME.

*(Knoxville.* September Term, 1916.)

1. MECHANICS LIENS. Improvement by lessee. Statute. "Su-
perior title."

Plaintiffs having constructed improvements for assignee of lease
which provided that all improvements should belong to lessor
at expiration of lease, and that property should not be subjected
to lien, knowing of lessor's title, could not remove improvements
to satisfy mechanic's lien under Shannon's Code, section 3531,
amended by Acts 1889, chapter 103, section 2, providing for such
removal where work was done in ignorance of parties' disability,
"or in other cases of superior titles or liens." (*Post, pp.* 9-16.)

137 Tenn.]  (1).

Thomas and Turner v. Exposition Co.

Acts cited and construed: Acts 1889, ch. 103, sec. 2.

Cases cited and approved: Reed v. Estes, 113 Tenn., 204; Alley
    & Bush v. Lanier, 41 Tenn., 540; Kay v. Smith, 57 Tenn., 43;
    Burr v. Graves, 72 Tenn., 554; Daniel v. Weaver, 73 Tenn., 392;
    Steger v. Refrigerating Co., 89 Tenn., 456; Cole Mfg. Co. v. Falls,
    90 Tenn., 466; Ice & Coal Co. v. Alley, 127 Tenn., 181.

Code cited and construed: Sec. 3531 (S.).

2. MECHANICS' LIENS. Improvements by tenant. Removal.
The fact that president of the lessor company was an officer of
    the lessee company and knew of improvements made for lessee
    by plaintiffs, having done nothing to mislead the partties, and
    his actions being consistent with lease, does not entitle plaintiffs,
    who knew of the lessor's superior title, to remove the improve-
    ments under Shannon's Code, section 3531, as amended by Acts
    1889, chapter 103, section 2. (Post, p. 16.)

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.
—WILL D. WRIGHT, Chancellor.

GREEN, WEBB & TATE, for Thomas & Turner.

CATES & PRICE and WRIGHT & JONES, for National
Conservation Exposition Co., and others.

CHAS. H. SMITH and JAMES M. MEEK, for M. F.
Rourke Co.

CORNICK, FRANTZ, McCONNELL & SEYMOUR, for L. A.
Galyon.

FOWLER & FOWLER and PARIS A. HAYNES, for Clai-
borne & Brooks.

W. E. DRUMMOND, for Guaranty Electric Co.

Thomas and Turner v. Exposition Co.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The various complainants in this case instituted separate suits in the chancery court at Knoxville, which were afterwards consolidated, for the purpose of recovering balances due upon contracts for the construction of certain buildings and the addition of improvements to others, in Chilhowee Park for the National Conservation Exposition Company. The lands upon which the buildings and improvements were made are the property of the railway and light company, and are owned and used by it for park purposes. The question for consideration by this court is the right of the various complainants to remove the buildings constructed and the improvements made thereon to secure the unpaid balance of the contract price.

There were decrees below in favor of each complainant for the balance due against the exposition company, from which no appeal has been taken. The chancellor also decreed the Guaranty Electric Company a lien on the leasehold interest of the exposition company in the lands in question. He also decreed that certain complainants had the right to remove all materials furnished upon the execution of bonds to save the railway and light company harmless from all damages by reason of said removal. From this decree the railway and light company appealed to the court of civil appeals. That court dismissed the bills

of Thomas & Turner, L. A. Galyon, and Claiborne & Brooks as to the Knoxville Railway & Light Company, holding that these complainants were not entitled to the right of removal. It modified the decree of the chancellor as to the Guaranty Electric Company in so far as it awarded it a lien, but affirmed his decree granting it the right of removal. It also affirmed the decree of the chancellor in all respects as to the M. F. Rourke Company.

The facts, so far as pertinent to the points determined in this opinion, are as follows:

The railway and light company is operating a street car system in the city of Knoxville, and in connection with its street railway has heretofore owned and operated the pleasure park known as the Chilhowee Park. Prior to the acquisition of this park, the street railway executed a deed of trust to the Standard Trust Company on all of its property, and all of its after-acquired property, to secure bonds aggregating $3,000,000. A corporation known as the Knoxville Park Association owned the park prior to May 11, 1911, and on that day it conveyed this park to the railway and light company. This deed was recorded on the same day. Afterwards the railway and light company executed a second deed of trust on all of its property, including the park, to the Guaranty Trust Company of New York to secure a bond issue of $10,000,000. This deed of trust was recorded in Knox county June 1, 1911. The indebtedness secured by this last deed of trust was outstanding and

unpaid on the property of the railway company, including the park, at the time the railway company executed the lease to the exposition company.

Before it conveyed the lands to the railway company the Knoxville Park Association executed a lease to W. M. Goodman, which, among other things, contained the following:

"It is also agreed that at the expiration of this lease, or at the expiration of any renewal thereof, the buildings and improvements erected and made hereunder, shall likewise be and become the property of the companies."

It also provided that the buildings and improvements provided for under the lease must be satisfactory to the lessors in character, design, size, and location. Goodman assigned all of his interest in the foregoing lease to the Appalachian Exposition Company on November 12, 1909. This assignment, together with the lease, was recorded in Knox county, November 26, 1909. Afterwards the name of the Appalachian Exposition Company was changed by amendment of its charter to that of National Conservation Exposition Company. This last company, on August 15, 1912, entered into an additional lease or contract with the railway company. This lease, among other things, contained the following:

"And whereas, the National Conservation Exposition Company has applied to the Knoxville Railway & Light Company for permission to erect other buildings upon said leased premises, to-wit: In Chil-

howee Park upon the same terms and conditions and with the same rights and privileges with reference to said new buildings as exists between the parties with reference to the buildings already erected upon said leasehold.

"Now, therefore, in consideration of the premises the said Knoxville Railway & Light Company, party of the first part, does hereby grant to the National Conservation Exposition Company the right and privilege to erect other and additional buildings upon said leasehold within five years from this date at its exclusive expense, but only upon such sites as the party of the first part shall designate for such building and only after the party of the first part shall have approved plans for the buildings to be erected, provided that in the erection of said bulidings said lessee shall make no agreements with contractors, furnishers of material or laborers in the name of the Knoxville Railway & Light Company, and provided that said lessee shall erect said buildings at its own expense and shall not in any way contract for the erection of said buildings so as to give the contractors, furnishers of material, or laborers engaged in the work a lien upon said new buildings or the land whereon said buildings shall be erected; and provided, further, that when said buildings shall have been erected that the same shall be owned and controlled by the lessors and the lessee in the same manner to the same extent and subject to the same conditions now applicable to the buildings that were

erected on said leased premises by the Appalachian Exposition Company under the terms of said lease contract.''

The foregoing lease was recorded in Knox county, October 8, 1912.

The exposition company, successor of the Appalachian Exposition Company, desired to continue an exposition as Knoxville for the purpose of exhibiting the products of what is generally termed ''the Appalachian section.'' To this end it desired to erect certain buildings in the Chilhowee Park, and made contracts with the complainants for that purpose.

On August 23, 1912, complainants Thomas & Turner entered into a contract in writing with the exposition company to erect what is known as the ''Land and Auditorium Building'' in the Chilhowee Park, for which they were to be paid by the exposition company the sum of $31,930. They were paid the sum of $27,420 which left a balance due them on their contract from the exposition company of $4,500, for which they have filed the bill in this case and seek the right of removal.

On April 23, 1913, complainant Galyon entered into a contract in writing with the exposition company to erect what is known as the ''Southern States Building'' on the park property for the sum of $20,834. There were some extras on this building, which, added to the contract price, aggregated $22,846.43. This complainant was paid by the exposition company

the sum of $17,000, leaving a balance due him of $5,876.43.

Complainants Claiborne & Brooks entered into a written contract with the exposition company to erect what is known as the "East Tennessee Building" for the sum of $10,834.63, upon which they have been paid $9,880, leaving a balance due them of $1,317.23. And on the same day they entered into an additional contract for the remodeling of the Knox County Building at the price of $3,457.24. This building had been erected some time prior to this contract, and the complainants named were to remodel it. They were paid by the exposition company the sum of $2,000 for remodeling this building, leaving a balance due them of $2,027.93. It seems there was some extra work done on this contract, but the exact amount is not material.

On May 24, 1913, the complainant Guaranty Electric Company entered into a written contract with the exposition company to install the electrical apparatus for the Knox County Building just referred to, for the sum of $328, and on the same day this complainant entered into another contract to install all the electrical apparatus needed in the Southern States Building for the sum of $3,780. There was perhaps some extra work done by it, and the balance now claimed is $1,153.15.

M. F. Rourke Company contracted with the exposition company in writing to do certain plumbing in the different buildings on the property which

amounted in all to $1,552.35. This complainant was paid $445 by the exposition company, leaving a balance due of $1,201.20.

Upon these facts the question for determination is whether the complainants are entitled to remove the fixtures and buildings erected by them in default of payment of the balances due by the exposition company and the railway and light company. It is apparent that no substantial relief can be recovered against the exposition company. It was stated at the bar that this company had forfeited its lease and gone out of business. It doubtless has no assets with which to pay complainants' claims. There can be no question but what all of the complainants, except Thomas and Turner, had knowledge that the Chilhowee Park property was owned by the railway and light company, and that the exposition company was operating under some arrangement with the railway and light company. Mr. Thomas, of the last-named complainants, says, in a general way, that he did not know of the arrangement between the exposition company and the railway and light company, but on cross-examination he does admit that he knew that the park property upon which he erected the building belonged to the street railway company. He says that he made no investigation of the records or otherwise to ascertain just what the rights of the exposition company were to erect a building on the property of the street railway company. The other complainants admit that they knew the park property belonged

to the railway company, and some of them knew that the exposition company was operating under a lease. But we think it cannot be successfully disputed that all of the complainants knew that the real estate upon which they were erecting the buildings belonged to the railway and light company, and that they had made contracts to erect them with the exposition company. It is not denied but what the Appalachian Exposition Company, the National Conservation Exposition Company, and the railway and light company are separate and distinct corporate entities. They are such in fact, and they were so dealt with by the complainants; that is to say, the complainants made their contracts with the exposition company, and have no relationship whatever with the railway and light company except such as is claimed under the statute to be hereafter discussed.

It is proper to state that the president of the railway and light company was an officer and director of the exposition company, and he knew that the complainants were erecting the buildings upon the property of the railway and light company under contracts with the exposition company. It is claimed by the complainants that the railway and light company is estopped by virtue of this fact.

The original mechanic's lien statute is found in Shannon's Code,  section 3531,  and provides for a lien upon real estate upon which a house has been constructed, built, or repaired, or fixtures or machinery furnished or erected, or improvements made by

special contract with the owner or his agent. It was early held in this State, in construing the statute referred to, that the owner of a leasehold estate is an owner within the meaning of the statute, and a mechanic's lien will attach to and may be enforced against such an estate in the hands of the lessee or his assignee. *Alley & Bush* v. *Lanier,* 1 Cold., 540; *Kay* v. *Smith,* 10 Heisk., 43; *Burr* v. *Graves,* 4 Lea, 554; *Daniel* v. *Weaver,* 5 Lea, 392; *Steger* v. *Refrigerating Co.,* 89 Tenn., 456, 14 S. W., 1087, 11 L. R. A., 580. It was also held that the contractor making the improvements under a contract with the lessee alone did not have a lien upon the property of the lessor for the improvements made upon the land. *Reed* v. *Estes,* 113 Tenn., 204, 80 S. W., 1086. See Jones on Liens, vol. 2 (3d Ed.), section 1280.

In this state of the law the legislature, by chapter 103, section 2, of the Acts of 1889, amended the mechanic's lien law so as to provide as follows:

"Be it further enacted, that section 1, of the act of the legislature of 1881, chapter 67, above referred to in the caption of this act, shall be amended so as to provide that if the work or improvement or materials be furnished for work done on the lands of any married woman, who has not signed the contract or agreement in writing, as provided in section 1 of the said act of 1881, chapter 67, and in ignorance on the part of said mechanic, laborer, or furnisher, of her right or claim, and if said married woman shall refuse to recognize or agree to said lien, said me-

chanic, laborer, or furnisher, shall have the right, after giving ten days' notice, to take and remove such property, or the parts of the same on which his labor was performed, or materials, machinery, or other property was used; and, provided further, the right of removal shall apply to all other cases of parties under disability, whether as minors, persons of unsound mind, or *cestui que trusts* or in other cases of superior titles or liens, when the work was done by the laborer or mechanic in ignorance of the rights of such parties, and said right of removal shall be extended to any repairs or improvements ordered by the tenant or occupier, when the owner of the leased or rented premises declines to pay therefor, the same to be removed without injury to the property originally leased or rented; Provided, that the courts of law or equity in this State shall have jurisdiction to hear and determine, and to enforce such liens on the property of persons in the cases aforesaid, care being taken to protect the rights of such parties as well as mechanics, laborers, and furnishers aforesaid.''

We are of opinion that complainants do not have the right of removal under the foregoing statute. It is insisted for them that the last clause providing the right and saying ''said right of removal shall be extended to any repairs or improvements ordered by the tenant or occupier when the owner of the leased or rented premises declines to pay therefor'' includes mechanics and laborers who do the work upon the leased premises whether they knew of the title and

ownership of another at the time the work and labor were done or not. It is said that the plain language of the statute extends the right of removal so as to include the case made by complainants, and that all that is left for the court to do is to give it effect.

We cannot assent to this construction for two reasons: In the first place, it ignores what has preceded in the statute. After giving the right to those who make improvements or furnish materials for improvements upon the property of a married woman in ignorance of her right or claim, and if the married woman shall refuse to recognize or agree to said lien, it is said:

"Provided, further, the right of removal shall apply to all other cases of parties under disability, whether as minors, persons of unsound mind, or *cestui que trusts,* or in other cases of superior titles or liens when the work was done by the laborer or mechanic in ignorance of the rights of such party."

The following clause, which is insisted upon by complainants as conferring the right of removal, is merely explanatory of the preceding clause. The expression "superior titles or liens" must necessarily include the title of lessor. The statute, in connection with the expression "superior titles," expressly says that the laborer or mechanic shall have the right of removel if the improvements were made in ignorance of the rights of the owner of the superior title. To construe the statute as contended for complainants would be to place an owner of the

leased or rented premises in a different category from that of one holding a superior title. When the legislature limited the right of removal to those acting in ignorance of superior titles in the preceding clause, it must be assumed that it meant for the succeeding clause to be understood in harmony with the preceding one. We do not think that the expression "superior titles or liens" can be ignored, and when it is given its proper effect, the statute limits the right of removal to those who act in ignorance of the superior title.

This construction is strengthened by the right of the parties as determinable upon the facts of this case. We think it can be justly concluded that the complainants made the improvements upon the lands of the railway and light company with notice of its rights under the leases executed to Goodman and the exposition companies. We say this because the complainants knew that the Chilhowee Park belonged to the railway and light company, and the leases under which the exposition companies were operating were of record in Knox county. While it is true that the lease given to the National Conservation Exposition Company by the railway and light company was not of record when Thomas & Turner made their contract with the exposition company, nevertheless the lease given to Goodman was of record, and Thomas & Turner knew that the exposition company did not own the land. The slightest inquiry upon their part would have disclosed the full rights of the parties.

By the plain terms of the leases, the railway and light company was to become the owner of the buildings erected upon its lands when the leases expired or when they were allowed to lapse for any reason. This right became vested in the railway and light company immediately upon the execution of the leases, and we think it but just that those who subsequently thereto, with knowledge thereof, placed improvements or erected buildings upon the lands of the railway and light company, without a contract with it, must have done so subject to the rights of that company. To conclude otherwise would be to hold that the exposition company, by its contract with the complainants, could oust the right of the railway company which it had previously granted, and of which the complainants had notice. The statute will not be construed so as to impute an intention to the legislature to interfere with vested rights of innocent parties when any other construction can be given it. *Cole Mfg. Co.* v. *Falls,* 90 Tenn., 466, S. W., 1045; *Ice & Coal Co.* v. *Alley,* 127 Tenn., 181, 154 S. W., 536; Pomeroy, Eq. Juris., section 1235; Jones on Liens, vol. 2, sections 1275, 1276, 1277.

In addition to what has been said, it may be also observed that the contract of lease expressly withholds from the exposition company the power to do the very thing which it is insisted was done—that is, so contract with complainants as to give them a lien upon the lessor's real estate for their unpaid balances from the lessee, and complainants had notice

of this provision in the lease when they made their contracts. Having notice of it, they made their contracts subject to it.

We do not think the fact that the president of the railway and light company was an officer and director of the exposition company and knew of the work being done by complainants should adversely affect the rights of the railway company. He did nothing to mislead them. His presence with the exposition company and his knowledge of complainant's work were entirely consistent with the rights of the railway company under the lease contract with the exposition company. The buildings were to be satisfactory to the railway company in location and structure, and this was in furtherance of that company's reversionary title to them, of which all parties had notice.