MAY TACKER, et al. v. C. S. MITCHELL.

Western Section, July 31, 1926.

Certiorari denied by Supreme Court December 11, 1926.

1. **Mortgages.** Chapter 81 of the Acts of 1184 applying to title retained contracts does not apply to a recorded mortgage.

   The remedies provided in Chapter 81 of the Acts of 1884 do not apply to recorded mortgages or what is generally termed a chattel trust.

2. **Mortgages.** Mortgagee taking mortgaged property and disposing of it in a different manner than that provided in mortgage does not lose the lien.

   While a mortgagee must dispose of the property according to the stipulation of the mortgage and the provisions of the statute governing the foreclosure of chattel mortgages, yet it is not the law that if he fails so to do in any essential particular or if he omits to sell the property after taking possession of the same, the mortgage is thereby invalidated and the lien lost. But in either case when other creditors have a junior claim upon the property the mortgagee must account for its value.

3. **Mortgages.** Evidence and burden is on mortgagee to show that property brought a fair price at a private sale.

   Where mortgagee takes possession of the mortgaged property and sells it at a private sale and the sale is attacked, the burden is on the mortgagee to show that the sale was properly and fairly conducted and the price paid was not so inadequate as to raise the presumption of bad faith.

Appeal in Error from Circuit Court, of Shelby County; Hon. R. H. Stickley, Special Judge.

Affirmed.

W. H Harrelson, of Memphis, for plaintiff in error.

Albert G. Riley, of Memphis, for defendant in error.

OWEN, J.   This suit was commenced before a justice of the peace by C. S. Mitchell, hereinafter referred to as plaintiff, against Mrs. May Tacker and her husband Tom Tacker, the action being founded on notes under $1000. There was a judgment by the justice of the peace in favor of the plaintiff and an appeal to the circuit court, where the case was tried before Special Judge Stickley, without the intervention of a jury and the trial judge rendered judgment in favor of the plaintiff for $627, and costs of suit. The notes to the plaintiff were executed by the two defendants jointly. A motion for a new trial was seasonably made. This was overruled and an appeal prayed and granted and perfected to this court and proper bill of exceptions signed and filed. The defendants have assigned five errors in this court.

The defendants in May, 1920, executed and acknowledged a chattel trust, naming one R. F. Lacroix as trustee, to secure twelve notes of $100 each, and four notes of $50 each, payable to the plaintiff, making a total indebtedness of $1400. One of these notes fell due each thirty days after the execution of the trust and the trust provided that in case there was default in the payment of any of the indebtedness it all became due.

Mitchell and Tom Tacker had been partners in the grocery business. Mitchell sold to Tacker and took a trust on the entire grocery business and meat market situated in the storehouse at Main and Dempsey streets, in Memphis, Tennessee. The trust also included, in addition to all of the groceries and meats on hand or hereafter to be acquired or purchased and placed in stock, all fixtures now in said storehouse and all others to be hereafter acquired, including one ice box, two show cases, one cigar case, one cash register, one pair of scales, one meat block and all butcher tools. This trust deed was filed for registration October 1, 1920. In December, 1920, Tacker filed a petition in bankruptcy, or became a bankrupt. Just whether the petition was voluntary or involuntary, does not definitely appear. A trustee in bankruptcy was appointed and he took charge of the stock of groceries and the meats in the butcher shop and all butcher tools. He released to Mitchell the other fixtures, the ice box, show cases and so forth and Mitchell testified that the trustee in bankruptcy informed him (Mitchell) that he could proceed to foreclose his trust deed. These fixtures were sold and brought $325 cash. This suit was instituted to recover the amount of the unpaid notes, amounting to $675. It was insisted by the defendants that Mitchell did not advertise according to law; that his sale was therefore void and he was not entitled to recover any deficiency; that by making a void or invalid sale his debt is extinguished.

The trial judge held that the property was not legally sold, but that Mitchell converted the property and was liable to the defendants for the true value of the property sold, which the court fixed at $400. He charged the plaintiff with a cash register which he sold, but upon which cash register he did not have a trust. It appears that the cash register which is mentioned or described in the trust deed had been sold or taken back by the manufacturer and Mrs. Tacker had substituted a cash register that she had owned in a separate business, for the one that was included in the trust deed. The circuit judge found that this cash register was worth $75.

It is defendant's insistence that these fixtures were worth $1400; however, the proof shows they were bought by the plaintiff and defendant as secondhand fixtures, and with the exception of the

cash register only cost $240, and had been used by plaintiff and defendant for something like a year prior to the public sale by the plaintiff.

The assignments of error raise the following propositions:

(1) The court erred in holding that the mortgage was executed as a full and final settlement and cancellation of the deed in settlement and satisfaction thereof.

(2) There is no evidence to support the judgment and holding of the court.

(3) Because plaintiff distinctly disregarded the terms of the trust; distinctly disregarded the law regarding the sale of chattels, and that there is no difference between the chattel mortgage and title retained contract.

(4) Because the proof shows that the fixtures were worth $1200, and being sold for $325, was not a valid sale; was a fraud and should shock the conscience of the court.

We are of opinion that the fixtures brought all that they were worth and that it was a good sale. The plaintiff advertised the property by posters, but failed to place an advertisement at the court house door. There were bidders present and the plaintiff did not buy the fixtures. The chattel trust was given to secure plaintiff's debt. Counsel for defendants insist that under the rule announced in Ice & Coal Company v. Alley, 127 Tenn., 173, and other cases dealing with title-retained notes, that plaintiff having failed to comply with the law in making the sale of the fixtures, he is not entitled to recover the deficiency. Under the title retained contracts, by virtue of Chapter 81 of the Acts of 1884, a summary remedy is provided in the conditional sales statute, and when this is used it must be strictly pursued, by retaking possession by consent of the purchaser, or by process of law, so that the respective rights of both parties may be fully protected and enforced. This act does not apply to a recorded mortgage or what is generally termed a chattel trust, and we are of opinion that the circuit judge was not in error in treating the taking of this property as a mere conversion, and that all plaintiff should be charged with would be the actual value, and from all the evidence we are of opinion that the actual value of the goods was not more than $400.

"While a mortgagee must dispose of the property according to the stipulation of the mortgage and the provisions of the statute governing the foreclosure of chattel mortgages, yet it is not the law that if he fails so to do in any essential particular, or if he omits to sell the property after taking possession of the same, the mortgage is thereby invalidated and the lien lost. But in either case when other creditors have a junior claim upon the property the mortgagee must account for its value. In some jurisdictions the

mortgagee would be held to account for the value of the goods to creditors having claims on them, if he sold them at private sale, without statutory notice. . . . The rule seems to be that the mortgagee has power to sell the property either at public or private sale, but that he should be held to strict account in case a sale is made by the latter method. If the mortgagor can show that the property sold at private sale was sold unfairly and under price, he will be allowed the full value. It is also the general rule in this country that a chattel mortgagee has such an implied power of sale. But the conduct and fairness of the sale and the rights obtained under it are always open to investigation at the instance of the mortgagor. . . . Where the mortgagee, contrary to statute and without the consent of the mortgagor, sells the property at private sale, such a sale, it has been held, is not void but voidable only, as the mortgagor may waive the benefit of the statute. However, if the sale is attacked, the burden is on the mortgagee to show that the sale was openly and fairly conducted and that the price paid was not so inadequate as to raise a presumption of bad faith.'' R. C. L., Vol. 5, page 469.

This same rule as quoted above is announced in Corpus Juris, Vol. 11, page 716.

We are of opinion that there is no error in the judgment of the lower court. All of the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed. Plaintiff will recover of the defendants (they having appeal on the paupers oath) by order of the court, the amount of the judgment rendered in the lower court, with interest thereon, and all the costs of the cause, for which execution will issue.

Heiskell and Senter, JJ., concur.