## COMMERCE UNION BANK v. JACKSON.—111 S. W. (2d) 870.

### UNION TRUST & MORTGAGE CO. v. SAME.

Middle Section.    May 24, 1937.

Petition for Certiorari denied by Supreme Court, December 17, 1937.

414

J. L. Reynolds, of Nashville, for appellant R. C. Jackson, Jr.
Thos. H. Peebles, of Columbia, for appellees, the Banks.

CROWNOVER, J.   These causes were consolidated in the chancery court.

These two suits were instituted by the banks, assignees, against the defendant, Jackson, who was an indorser of title retention notes. The chancellor rendered a decree against Jackson for $5,812.57 in favor of the Commerce Union Bank and for $1,330.09 in favor of the Union Trust & Mortgage Company. Jackson appealed to this court and has assigned errors which raise the proposition that the holders of the notes, the banks, failed to advertise and sell the automobiles in accordance with the Conditional Sales Act, Shannon's Code, section 3666 et seq., therefore he as indorser was released.

The Mt. Pleasant Chevrolet Company, of Mt. Pleasant, Tenn., sold a number of automobiles, in the years 1930 and 1931, under the Conditional Sales Law taking title retention notes for same. The notes also contained the following provisions:

"It is also agreed that said automobile, in case of default, may be sold privately if the holder or holders deem such private sale to the best interests of such holder or holders.

"The makers, endorsers and sureties severally waive presentment, protest and notice of protest, for the non-payment of this note, and all defense on the ground of any extension of time of its payment that may be given by the holder to them, or either of them, or to the maker or makers hereof."

R. C. Jackson, Jr., was manager and secretary and treasurer of the automobile company from about the first of 1931 to June or July of that year.

Jackson made oral contracts with Ayres, vice president of each of these banks, to sell the automobile company's notes to said banks, and sold and assigned a number of title retention notes to them. The notes were indorsed by Jackson for the automobile company and most of them were also indorsed by Jackson individually.

A number of the notes were not paid by the purchasers and the banks, and in some instances the automobile company, took possession of the automobiles without legal process; the buyers voluntarily surrendering them. The banks advertised them and sold them at public outcry. Copies of the advertisements filed as exhibits show that fourteen were advertised on October 26, 1931, four on November 12, 1931, and three on December 31, 1931.

Jackson contends that the automobiles were not advertised for sale within ten days after they were taken possession of by the banks, and were not sold on the advertised date, as required by the statute. He testified that the fourteen automobiles advertised on October 26, 1931, for sale on November 5, 1931, were not sold on that date; that the sale was postponed. Ayres testified that he did not know how long the cars were held after possession was regained before they were advertised for sale; and he said the sale advertised for November 5, 1931, might have been postponed. Other witnesses testified that the automobiles were held a long time, but said they did not know how long.

1. The complainant banks have failed to show that the automobiles, for which the notes sued on were executed, were, within ten days after possession was regained, advertised "for sale, for cash, to the highest bidder, by written or printed posters posted at as many as three public places in the county where the property is to be sold, one of said places to be in the district in which said property is to be sold and one at the courthouse door in the county in which the property is to be sold, and the other or third at any public place in the county, said notice to be posted at least ten days before the day of sale, and to contain a description of the property to be sold, and time and place of said sale," and that "at the time and place as stated in said notices" they offered for sale and sold said property, etc. Shannon's Code, section 3666.

Failure on the part of the holders of the notes, the banks, to comply with the above statute releases the maker of the notes (the purchasers of the automobiles) from the balance still remaining due on the notes. Shannon's Code, sections 3666, 3669; Gracy v. Southern Auto Sales Co., 6 Tenn. App., 360.

This failure also releases the indorser.

"Indorsers are released if the security is impaired by the act or negligence of the holder to the injury of the surety or in-

dorser, as where there is an improper sale of collateral." 8 C. J., 620, sec. 861; Shannon's Code, sec. 3516a128, subd. 5.

"The surrender or release by the holder of a bill or a note of any security which he has received from the acceptor or maker, for the payment of the instrument, operates as a discharge of in-dorsers to the amount of the security so surrendered, provided the indorser's liability has not become fixed, and they do not consent thereto." 8 C. J., 620, sec. 861.

"Where the holder does any act prejudicial to the indorser it will discharge the indorser." 3 Michie's Digest, 384, sec. 259; Love v. Allison, 2 Tenn. Ch., 111; Shannon's Code, sec. 3516a128, subd. 5.

Jackson was an anomalous or irregular indorser. 8 C. J., 74-76; Code, sec. 3516a72, subd. 2.

The testimony as to how long the automobiles were held and when they were sold was indefinite, but the burden is on the holder or seller to show that the statute was complied with. Gracy v. Southern Auto Sales Co., supra; Massillon Engine & Thresher Co. v. Wilkes, Tenn. Sup., 82 S. W., 316; Whitelaw Furniture Co. v. Boon, 102 Tenn., 719, 52 S. W., 155. And the banks have failed to show compliance with the statute.

No attempt was made to show that the other provisions of Shan-non's Code, section 3666, as to posting of notices, was complied with.

Jackson testified that when the sale advertised for November 5, 1931, was postponed he did not object. But this was not such a consent to the delay of the sale that waived his right to insist that his security be unimpaired. First Nat. Bank v. Powell, Tex. Civ. App., 165 S. W., 131.

However, the banks have failed to show that the other provisions of the statute, Shannon's Code, section 3666, were complied with.

The complainants contend that the provisions of the condi-tional sales statutes were waived in the face of said notes, and that the bankers, indorsers, and sureties likewise waived in said con-tracts all defenses of extension of time of payment.

Such waivers, before default in payment, set out in the contract itself, are not binding on the seller or purchaser. Massillon Engine & Thresher Co. v. Wilkes, supra.

The second provision in the conditional sales contracts in which the makers, indorsers, and sureties agree to waive all de-fenses on the ground of any extension of time of its payment that may be given by the holder to them, does not mean "extension of time" for advertisement and sale under the conditional sale statute, hence it cannot affect this suit.

The conditional sale statute must be strictly pursued. Southern Ice Co. v. Alley, 127 Tenn., 173, 154 S. W., 536; Range Motor Co. v. Tipton, 161 Tenn., 427, 33 S. W. (2d), 75.

The banks contend that Jackson orally guaranteed the payment of the notes. Parol evidence as between the parties is admissible in Tennessee to explain the instrument and to show the relationship of the parties. Mercantile Bank v. Busby, 120 Tenn., 652, 113 S. W., 390; Roskind v. Elterman, 1 Tenn. App., 272. But the testimony for the banks fails to establish a guaranty. We think the testimony fails to show that the defendant, Jackson, guaranteed payment of these notes. The vice president of the banks was asked what was the understanding and agreement with Mr. Jackson when he obtained the indorsement, and he replied: "Just endorsement." He was then asked: "Do you know whether he guaranteed payment or not?" and he answered, "Yes sir." He was then asked to state the conversation with reference to the guarantee, and he then detailed a conversation that he had with the defendant's father, R. C. Jackson, Sr., in which he said that he told Jackson's father that they could handle the paper under certain conditions, for 2 per cent and $1 charge for each note. He says that he stated to Mr. Jackson, Sr., as they went out of the door: "Now, Mr. Jackson, of course we expect you to stand behind this paper also," and he stated that Mr. Jackson said that "anything that Rufus did he would stand behind." He further testified that subsequent to these conversations he had the defendant, R. C. Jackson, Jr., to write him the following letter:

"June 30, 1931.

"Commerce Union Bank,
"Spring Hill, Tenn.

"Dear Sirs: This is to advise you that when our business connection was started with you the arrangement was made in the presence of my father, R. C. Jackson, and he stated to your Mr. E. H. Ayers that he 'stood behind' his son, R. C. Jackson, Jr.

"Very truly,
"Mt. Pleasant Chevrolet Co.
"By R. C. Jackson, Jr., Mgr."

As will be seen from this testimony, the defendant, Jackson, did not guarantee the payment of the notes and was merely an indorser, and therefore only secondarily liable under the negotiable instruments statute, Shannon's Code, section 3516a1 et seq., and was released on the failure of the banks to advertise the automobiles as required by the conditional sales statute. The above was all the evidence on the subject, and fails to establish a guaranty.

The assignments of errors are sustained, and it results that the decree of the chancellor is reversed and the suit dismissed. The costs of the cause, including the costs of the appeal, are adjudged against the complainants and the sureties on their prosecution bonds.

Faw, P. J., and Felts, J., concur.