BOYD FORD, et al. v. WHITTLE TRUNK & BAG COMPANY.

Eastern Section. ——— —, ———.

Kennerly & Key, of Knoxville, for appellant.
Jennings, Saxton & Wright, of Knoxville, for appellee.

PORTRUM, J.   The purpose of this suit was to collect an alleged indebtedness of $4579.46 claimed by the complainants to be due them for electrical equipment installed by them in the manufacturing plant of the defendant, Whittle Trunk & Bag Company, and for work claimed to have been done on said equipment.   A recovery was sought for this sum and the declaration of a mechanic's lien to secure and enforce the same.   The complainants allege a special contract with the defendant, Whittle Trunk & Bag Company and Whittle Trunk & Bag Corporation, its successor; they installed, constructed and equipped an electrical system consisting of a generator, switchboard, concrete foundation, and electric motor, and that in the installation of said electrical equipment they reconnected a large generator and switchboard and furnished the necessary materials incident thereto.   Boyd Ford and J. E. Shumaker were co-partners doing business in Knoxville, under the name of Armature & Motor Works.   They allege the terms of their special contract to be:   They were to be paid for the necessary labor and materials which they used in the installation, equipment and rearrangement of said electrical system when said labor was performed and said materials furnished.   The bill made no reference to a provision of the contract for the profit of those doing the work, but in the answer to the cross-bill it is said the contract contained the further provision that the compensation was measured by $33\frac{1}{3}$ per cent of the cost of the work and materials furnished. Originally there was a contract for a stipulated sum for specified work but it became necessary to amend this contract to provide for additions and alterations found necessary.   It was further averred

that the work was completed, accepted and put into use by the defendant, and the account was due and unpaid.

In the defendant's answer it admits the execution of the original contract and the supplemental agreement in reference to the changes made necessary by the addition of motors and the incidental re-wiring. But it says the foreman of their plant authorized a re-wiring of the building without authority and when the bill for the re-wiring, along with the account under the original contract was presented, the general manager, Mr. Rule, objected to the exces ive-ness of the account for the re-wiring and also notified the com-plainants that the work was done without authority. He then and there notified them to do no more work without his express direction further than complete the job under the original agree-ment and its supplement. It is averred that notwithstanding this express direction to the complainants, and after they had asked for the work of re-wiring the generator and rebuilding the switchboard and had been told to submit a bill or an estimate to determine this cost, so the general manager could determine whether to permit them to do the work, they failed to submit the estimates but went to the foreman in charge, and represented to him that they had authority from Mr. Rule to do the work, and told the foreman that it would cost about $300 to re-wire the generator; under this repre-sentation, the foreman permitted them to begin work upon the in-stallation of this generator and switchboard in the plant where they were then completing the original contract and supplement. It is averred that they did the work without authority and in a surreptitious manner, and no liability arose on the part of the defendant. It is insisted, in the event of liability, that the charges are grossly excessive and that the accounts for supplies are padded, and as a result the profits or percentage upon the cost are greatly increased. At the time the account for the unauthorized re-wiring was presented objection was made to its excessiveness but the account was paid with the understanding that there was to be no work done without express authority from the general manager. The company filed a cross-bill seeking to surchange and falsify this settlement and purge it of its alleged excessive charges and also to recover for a generator said to have been converted by the partnership. These issues were put at issue by the answer of the partnership.

Upon the main issue the chancellor found in favor of the com-plainant. The partnership was engaged in rewinding the motor and installing the switchboard over a period of several months, and during this period the general manager of the corporation was present and in and about the building; the presence of the workmen and their engagement in installing the equipment was apparent. The court held, " . . . he (Rule) was bound

to have taken notice of the doing of said work and the furnishing of said materials, and that in fact he knew about it; . . . said materials were furnished and said work done under the eye of the general manager and with his knowledge and consent . . ."

In reference to the cross-bill the court declined to reopen the settlement made in November for the re-wiring of the house; he granted a recovery for the conversion of the generator in an amount of $75; and as for the excessiveness of the charges, he said: " . . . under the facts of this case the contract did not authorize a charge by the complainant for overtime and work done on Sunday, and that in order to reach the equities of the case, the bill of the complainants, after the deduction of said sum of $75, the value of said generator thereof, should be further reduced to the extent of five per cent." He entered judgment in favor of the complainants for the sum of $4,279.24, with interest from the date of the filing of the bill, and declared a mechanic's lien and ordered the property sold, under terms specified in the decree. From this decree, the defendant has appealed.

The first error is, "The chancellor erred in holding and finding that the defendant entered into a contract with the complainants for the doing of the work and furnishing of the materials sued for in this case, and in finding that the general manager of the defendant company knew that said work was being done and said material being furnished."

Originally there was a special contract entered into by the parties without question. The contract price was specified but it became necessary to do additional work and install additional motors, as for this, it was to be done on a force account basis, that is, cost of the work and materials plus a certain per cent for the contractor. While this work was being done, the foreman directed the complainants to re-wire the building, in order that the wiring would conform to the new arrangement. When the bills for this work were present the first dispute arose. The complainants admit that Mr. Rule countermanded any additional work and expressly directed them to do no work without his expressed order. They were to do the work at hand, that is, complete the work they had undertaken. About this time they had a contract to go to Campbell County and remove a generator, which had been used in a coal mine, to the plant of the defendant; it was the purpose of the defendant to electrify its plant and generate its own motor power, since it could do this more cheaply from the refuse of this plant than purchase its electricity from the Knoxville Power & Light Company. The complainants were paid an agreed price for the removal of this generator from Campbell County to the plant in Knox County, but this generator generated voltage of 2200 volts, and in order to use it in the plant it was necessary to do one of

two things: first, to re-wire it so that it could generate 260 volts and to adjust its switchboard to conform with this voltgage, or, second, to purchase a transformer which would step down the voltage from 2200 to 250, at a price of at least $3,000. If the company purchased a transformer, it would not have been necessary to employ the partnership to re-wire the generator and adjust the switchboard. The partnership applied for this work, and Mr. Rule told them to submit an estimate. They did not submit the estimate, but complainants went to the foreman, Mr. Graham, and told him they would re-wire the generator. He asked if they had authority from Mr. Rule and they assured him they did. With this assurance Mr. Graham permitted them to begin the work, and they worked for a period of several months, that is, from the fall until March in the following year. They had not removed the switchboard into the plant of the company but had taken it to their own shop. At the time of the conversation with Mr. Graham, he asked for an estimate of its cost, and was told it would cost about $300 to re-wire the generator. When the work was completed and the bill submitted for re-wiring the generator and adjusting or rebuilding the switchboard, the account amounted to more than $4500; however, a part of this was for work done in finishing up the original contract. The complainants' proof establishes the fact that the rebuilding of the switchboard amounted to as much as the cost of a new switchboard, and the re-wiring of the generator was less than the estimated price of $300. The cost of a transformer was $3,000, so it is apparent the company would have saved money had it purchased the transformer, and abandoned the re-wiring of the generator and the rebuilding of the switchboard. If the complainants' bill is fair and if they had submitted an estimate, in all probability the corporation would have followed the other course. By following the course they did, they secured the work. The question now is: Are they entitled to recover for the work done?

Mr. Rule was present in and about the shop and saw the workmen at work there, rewinding the motor. He said he thought they were engaged in completing the work they had agreed to complete; they were there for a long time under his observation, and they had a right to believe that he knew they were there upon the job; had he exercised reasonable prudence he would have discovered what they were about and have stopped them, since he did not and the work was put in use by his corporation and is now in use, it is not equitable to permit the corporation to escape without paying the just value for the work done. If he did not know the work was being done, he must have closed his eyes, but if he did, he knew it was being done without expressed authority. When the bill was finally presented he did not then raise the question of the corporation's liability. We concur with the holding of the chancellor

that he knew that the work was being done, on the ground that a reasonable man would have known it and he should have known it too. It does not necessarily follow that since he knew the work was being done that that raised a special contract, and we do not concur with the holding of the chancellor that there was a special contract upon which to base a mechanic's lien. Upon the facts stated in the decree, the recovery was granted upon the faith of an estoppel, or since the work was done with the company's knowledge, then upon a quantum meruit basis. If there were a special contract, then what were the terms of the agreement? A member of the partnership states that he and Mr. Graham, the foreman, agreed upon the cost plus basis of thirty-three and one-third per cent, but he had been expressly advised that Mr. Graham did not have authority to make any other agreement. He had stated to Mr. Graham that the estimate for rewinding the motor would be $300, but had said Mr. Rule had authorized it. The partnership could not rely upon this as a part of the contract, because Mr. Rule had not authorized it. So if there was a special contract, then it was without terms nor provisions unless the terms of the supplemental agreement made to the original contract is incorporated as the terms of the new contract. No one with authority ever agreed to it.

We think the complainants are entitled to recovery, but that the chancellor erred in holding there was a special contract and the recovery was secured by a mechanic's lien. The mechanic's lien statutes are construed strictly as to the existence of the lien but liberally as to effectuate it if once it had been established. Shannon's Code, Section 3531 and Note 16, with authorities. At most, there could be only an implied contract arising out of the conduct of the parties. We doubt if it could be said to be an implied contract, for it is not proper to imply unknown provisions; this is a recovery based upon the equities of estoppel.

We think the assignment of error, questioning the refusal of the chancellor to open up the settlement made in November, 1926, is not well taken. At the time, Mr. Rule complained at the excessiveness of the charges, but he was content to pay the bill with the understanding there would be no other work done unless he directed it. If the charges were excessive, he should have corrected it then, and the fact that other work was done without his instruction does not give him the right to reopen the settlement he made with full knowledge of the controverted facts.

We are also of the opinion that the assignment questioning the recovery of $75 for the converted motor is not well taken; the weight of the proof appears to support the conclusion as found by the chancellor.

The chancellor decreed a right of recovery. He then fixed the amount upon the basis claimed by the complainants, after making

a horizontal deduction to satisfy the complaints made by the defendant on the ground of excessive charges and unauthorized work done. His action is assigned as error. The methods were, cost of material, cost of labor plus 33⅓ per cent, equalling the amount, less 5 per cent. There is no complaint made to this method of determining the amount of recovery provided the cost of the material and of the labor is accurately determined. The complaint is that the cost of the material and of the labor is excessive and that the horizontal deduction does not meet the equities. So in event the cost of labor and material cannot be accurately determined, then the court will necessarily have to fall back upon a quantum meruit basis. But how is this court to determine if the cost of labor and material is excessive? And how can the court tell whether the horizontal cut made by the chancellor is a correct method of determining the excessiveness or the overcharges and illegal items? The only way this can be done is for the court to state an account. The chancellor adopted the horizontal cut in preference to an accounting; so, if this court states an account there will be no concurrence to relieve the Supreme Court from a like labor. This court would be greatly handicapped in an attempt to state an account because of the condition of the record; the exhibits are sent up in the original form, and compose a package containing hundreds of separated papers. For instance, one of the assignments refers to Exhibit D to the testimony of a certain witness; in reply it is stated the Exhibit D referred to is an exhibit to the direct examination, and the one covering the item is Exhibit D to the cross-examination. The exhibits are so numerous, they are numbered as follows: 12-J, etc. If it were practicable it is not incumbent upon this court to state an account, and where the chancellor has determined the main issue and fails to refer the controversy over the items to the master, then this court will remand the case for an accounting and reference. Provident Life & Accident Insurance Company v. Globe Indemnity Company, 156 Tenn., 571, 3 S. W. (2d), 1057.

We think an accounting is necessary to meet the ends of justice, and we are not satisfied with the horizontal cut made by the chancellor, because we have no way of determining if this is correct without stating an account.

The appellant assigns more than twenty errors questioning different items of charges, and the total aggregate for overcharges is the sum of $2311.44; the overcharge on labor alone is claimed to be $1295.63. These different items of account are evidenced by orders numbered consecutively and run as high as 827. This court is not called upon to make minutial examination of so many papers, but this matter ought to be thoroughly investigated. The profits were dependent upon the cost of the work, and the lower the cost the lower the profit. One of the partners was asked:

"Q. Did he work the hours charged in this order about which I am asking? A. Those hours he turned in by time-tickets."

But they admit that many of the time-tickets are lost and the employer is compelled to adopt their books. They did not present invoices representing their purchases, and account for it by saying that they took the supplies from their own stock. It seems to us if they were going to 'do this they should have rendered a statement to the corporation periodically and not wait for months and after the work was done. The charge for one item of $98.20 is made from the express charges and not from the invoices. The final result is for a large part of these charges the defendant must take the account as made by the complainants for there are no invoices and no time-tickets to establish the truth of the original charge. In view of the fact that the remodelling of the switchboard cost as much as a new switchboard would cost, and the work on it and the generator amounted to considerably more than the cost of a new transformer which would have answered the purpose, it is apparent that the corporation was involved in an unprofitable undertaking.

It is true the complainants introduced certain witnesses who testified that the work done was worth the price fixed, but this is not convincing, for it is unreasonable to say that people would have the old repaired under a cost plus basis when the price equals the cost of the new. We think that if the work had been let on a contract it would have been done cheaper than the cost of the instruments repaired. It is true this motor originally cost about $20,000 and when it was reconditioned it was a valuable motor worth probably $10,000, but that is no reason for the complainants making excessive charges and appropriating to themselves part of the profits made in the purchase. When a firm is doing business of this character upon a cost account basis and does not keep its books in a manner fairly indicating, by invoices and labor tickets which will show the correct status, it has no grounds to complain if the matter is referred for reasonable investigation. With its records in this state, the burden is upon it to show clearly the correctness of each charge.

The judgment of the lower court is affirmed to the extent of granting a recovery for some amount, but a reference is ordered to determine the amount. The settlement of November, 1926, will not be reopened, nor will the question of the converted motor. The complainants are not entitled to a mechanic's lien to secure their recovery. The cost of the appeal is divided equally.

Snodgrass and Thompson, JJ., concur.