ARNSTEIN REALTY CO. *et al.*, COMPLAINANTS, APPELLANTS,
*v.* W. D. WILLIAMS *et al.*, DEFENDANTS, APPELLEES.

*(Jackson,* April Term, 1931.)

Opinion filed July 18, 1931.

ROBERTS & ROBERTS and W. C. DAVIDSON, for complainants, appellants.

HORACE OSMENT, W. E. NORVELL, JR., WM. J. WADE, GEORGE H. ARMISTEAD, JR., ALFRED T. ADAMS, MANIER & CROUCH and NORMAN R. MINICK, for defendants, appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

By deed dated August 23, 1926, Williams acquired title to a lot in Nashville, subject to vendor's lien of $1165. He contracted with A. J. Barnes to erect a house thereon and sell it to him for $5000, this consideration to be the assumption of a mortgage note of $3500, a small cash payment and monthly notes. Finding himself unable to finance the deal and finish the house, he engaged Arnstein, doing business as Arnstein Realty Company, to make the contemplated improvements, and on October 2, 1926, conveyed the title to Arnstein for his security and convenience with this object and understanding, agreeing on a consideration to go to Arnstein for his services of $200. Meanwhile, Williams had begun the improvements on the lot, and contracted various items of indebtedness for labor and material for which statutory lien liabilities had accrued. Meanwhile, also, a note for $435.10, representing advancements made had been executed by Williams to one Griffith, dated September 25th and secured by a deed of trust on this lot, which was recorded September 27, 1926. When Arnstein took the title and engaged to act for the parties he thus found the title encumbered by (1) the vendor's lien of $1165, (2) the statutory liens above mentioned, and (3) the trust deed note of $435.10.

After taking over the property Arnstein proceeded with the making of the contemplated improvements and,

pending the procuring of the contemplated mortgage loan of $3500, advanced various sums to laborers and furnishers. Thus matters proceeded some twenty-five days until October 27, 1926, when Arnstein filed the original bill in this cause showing the facts of his arrangement with Williams and his actions thereunder, and alleging that Williams had greatly underestimated and misrepresented to him the extent of the liens and encumbrances against the property, and that the aggregate of these had been found to be in excess of the total of $5000 which Barnes was to pay for the property, and that it was therefore impossible for him to perform his contract without heavy loss. He set up the advancements and outlay made by him and sought to have the Court take jurisdiction and settle the right and priorities of all the parties having an interest in the subject-matter; asked for a reference and that the land and improvements be sold and the proceeds distributed, etc.; and that meanwhile an injunction issue restraining other suits. The proceeding was in the nature of a general creditors suit, many of the claimants being named either as complainants or defendants and all others asked to be required to come in by petition.

The injunction issued and the cause proceeded along the lines indicated. A reference was had to the Master. His report was confirmed by the Chancellor and his decree has now been affirmed by the Court of Appeals. All issues of fact have therefore been finally disposed of. However, by his petition to this Court, which has been heard and argued orally, Arnstein raises questions of law, complaining of the refusal to accord his claims priority along with and equal to that decreed to the claims of others for labor and materials furnished.

The claim of Arnstein as stated in his bill is $1205.19, made up of $905.19 paid out by him to certain laborers and furnishers, the $200 which he was to receive as compensation, and $50 for his attorney. It appears clear that the last two of these items are not entitled to that priority accorded the (1) mortgage and trust deed debts, or (2) the statutory lienors. The plausible doubt is as to the item of his debt which arises out of his payment of labor and material claims.

Looking to the substance of the case stated by the bill, and the proof, we are of opinion that Arnstein by his agreement with the owner of the lot, by which he engaged first to erect the improvements, and then to turn over the property to Barnes, became a general contractor undertaking the completion of the improvements on the lot. Such a contractor or "undertaker" has a lien by statute (Section 3531, Shannon's Code) for his expenditures for labor and materials for one year, and "until the decision of any suit that may be brought within that time for the debt due said mechanic or undertaker." If the title had remained in the owner his right to such a lien would have, of course, been clear. In such situation his lien rights would have been subject alone to the vendor's lien and Griffith mortgage debt recorded prior to his contract, with the right to share ratably with those laborers and furnishers who had dealt directly with the owner.

This relationship and his rights accruing thereunder were not affected by the transfer to him of the title as security for his expenditures on the property. This transfer goes to the remedy only. In the absence of such a transfer to him of the title his remedy would have been that provided by Section 3543, Shannon's Code,

reading, "This lien shall be enforced by attachment either in law or equity, or by judgment and execution at law, to be levied upon the property on which the lien is."

■ The question presented is whether attachment process was essential to the establishment and enforcement of his lien rights for labor and material furnished or paid for by him as a general contractor, for the making of the improvements on the lot. We think not. While it is true that our statutes provide for enforcement by attachment of all mechanic's liens, whether asserted by general "mechanics or undertakers," or by subcontractors, it is obvious that this provision goes to the remedy, rather than the lien right. The provision for the remedy by attachment contemplates the existence of the lien. And when a state of facts appears with respect to the title and possession of the property involved which renders wholly unnecessary the process of attachment, the doing of the useless thing will not be held essential in equity.

■ While the statutes are to be construed strictly in determining the right to the lien, they are to be construed liberally in respect to the remedy. *Hotel Co.* v. *Construction Co.*, 135 Tenn., 315; *Thompson* v. *Baxter,* 92 Tenn., 305; *Blue* v. *Gunn,* 114 Tenn., 423; Note 16 to Sec. 3531, Shannon's Code.

Now the office of the writ of attachment is to impound and bring into the custody and jurisdiction of the Court the property against which rights are asserted. In the instant case the complainant had procured the title and possession of the property before bringing his suit, and in filing his bill brought the property into the custody and jurisdiction of the Court, certainly as effectively and completely as by the process of attachment. No issue was

or could have been raised questioning the court's custody of, and power to sell, the property and make equitable distribution of the proceeds.

We have been cited to no case passing directly on the situation here presented, and expressions of this Court holding attachment necessary in enforcement of mechanic's liens are not determinative. They are none of them cases in which the lienor bringing suit had previously acquired title to and possession of the property. In all of them custody and control of the property had to be acquired.

Moreover, the insistence made that attachment was essential overlooks a distinction which this Court has recognized between the remedy of the subcontractor, having no personal claim against the owner, and the general "undertaker" by direct contract with the owner. The restriction to the remedy by attachment is applicable to the subcontractor only, and does not apply to one dealing directly with the owner, as in the instant case. *Taylor* v. *Lumber Co.,* 107 Tenn., 41.

Consistently with these views, the decree of the Court of Appeals must be modified so as to accord to the claims of Arnstein for labor and materials furnished and paid for by him before the bringing of his suit priority over general creditors of the owner Williams, but subject to the prior registered mortgage and vendor lien debts. In other words, the order of priority as fixed by the decree of the Chancellor and affirmed by the Court of Appeals will be modified in this, that the lien claim of complainant Arnstein for labor and material paid for or furnished by him in his partial performance of his contract to erect the improvements will be accorded that priority designated "(c) Third" in the decree, along

with that of Phillips & Buttorff Mfg. Company. No modification is made as to the claim of $200 for services, or as to the deduction from the allowance to Arnstein of certain rents with which he was charged. We are satisfied that the equities are met in these respects. With the modification mentioned the decree is affirmed and the cause remanded for distribution accordingly.