## KNOX-TENN RENTAL COMPANY v. SARBEC CORPORATION et al. —442 S.W.2d 652.

Eastern Section. November 14, 1968.

Certiorari Denied by Supreme Court May 5, 1969.

Ambrose, Wilson, Thomas & Lockridge, McCampbell,
Young & Bartlett, Robert Worthington, Jr., Finklestein

& Kern and Joseph M Rogers, Knoxville, and Frank P. Bird, Maryville, for appellant.

Joseph J. Levitt, Jr., Knoxville, for appellee Sarbec Corp.

McAMIS, P.J. Appellants challenge the action of the Chancellor denying them a mechanic's lien for materials furnished Colonial Hills Country Club, Inc., a lessee of appellee Sarbec Corporation.

A charter for Colonial Hills Country Club, Inc., was obtained by three Creech brothers. By its charter it was authorized to operate a country club, but the proof shows it never came into being as a corporation and it seems to be conceded throughout the record that Creech Brothers are to be treated as a partnership.

There are a number of assignments of error but, in the view we take, only the fifth and sixth need be considered in this opinion. The fifth assignment complains of the action of the Chancellor holding valid and enforceable a provision in the lease prohibiting the doing of any act by the lessee which would create a lien on the reversionary interest of Sarbec Corporation. By the sixth assignment it is insisted a fee of $600.00 to attorneys for lien claimants is inadequate.

Sarbec Corporation is a trading and investment corporation. Its stock is owned in equal shares by S. Harry Busch and Dr. Harold J. Winston. On September 25, 1961, it owned the unencumbered title to a tract of land on Aloca Highway in Knox County which was equipped for, and had been operated as a country club.

On that date Sarbec executed a lease of the land and equipment to Colonial Hills Country Club to run for

a period of ten years with the privilege of renewal for an additional ten years. The lease provides that Sarbec would receive each month as rent fifty per cent of all dues, (which would not be less than $50.00 per annum) assessments and initiation fees, exclusive of taxes, in the operation of the club. It is then provided that, in consideration of the remodeling to be done by the Lessee as provided in the lease, the rent for the first year should be only twenty-five per cent of such dues, assessments and initiation fees. In addition, Sarbec was to receive ten per cent of other revenue except from the "sale of food" received by the Lessee in the use of the premises.

By the terms of the lease, the Lessee agreed to expend the sum of $75,000.00 during the first year equipping and remodeling the building and improving the grounds. Before letting any contract for such improvements cost estimate and plans were to be submitted to Lessor. Such improvements were to be started immediately after the execution of the lease. The lease further provides that in no event should the Lessee.

"have power, authority, or right hereunder to incur or create any obligation in respect of the premises, buildings or improvements, which shall create or constitute a lien or claim in favor of itself or any third person * * * and notice is hereby given to all persons furnishing labor and materials therefor that any liens therefor shall attach only to the leasehold interest hereunder and be subject and subordinate to all the rights, title and interest of the Lessor * * *"

The lease requires the lessee to keep the buildings in such repair that their value would never be less than at the beginning of the term, keep the buildings insured

against fire and procure insurance protecting the Lessor against public liability. It is then provided:

"in case of fire, all such sums of money as shall be recovered or received, by virtue of such insurance shall, with all convenient speed, be applied, expended and paid out, under the direction of the Lessor and Lessee in rebuilding or restoring or repairing the said buildings and premises."

There is testimony to the effect that the work of improving the property began a few days prior to the registration of the lease.

In November, 1961, the building on the property was destroyed by fire as the result of which $54,000.00 from insurance came into the hands of Sarbec. After some disagreement arose as to the use of this money it was mutually agreed Sarbec would turn the entire sum over to James D. Turner, a bookkeeper in its employ, as escrow agent and the fund would be paid out on order of Willard Creech in the discharge of liens for labor and materials in restoring the building which had burned. This procedure was followed until April 19, 1962, when the last pay roll was met out of this fund. In the meantime, according to the testimony of Willard Creech, he had invested more than $50,000.00 of his own funds. The escrow fund on that date had been reduced to less than $10,000.00. The building was never completed and it appears without dispute that the amounts claimed by appellants for materials ordered by Creech and used on the premises are still outstanding and unpaid.

The record strongly suggests that Creech purposely left the impression with furnishers of materials that Sarbec or its two stockholders were furnishing financial

backing for the project. Apparently none of the claimants knew of the exact relationship between Creech and Sarbec. None of them had actual knowledge of the provision of the lease above quoted relating to lien claims against the reversionary interest of Sarbec. Although frequently present while construction was going on, neither Busch nor Dr. Winston either affirmed or denied they were in any way involved in the work going on.

T.C.A. sec. 64-1102 creates a mechanics lien for work or materials furnished "by special contract with the owner or his agent".

Variety Fire Door Co. et al. v. Hanson-Worden Co., 10 Tenn.App. 254, holds in effect that, under circumstances quite similar to the present case, the term "agent" includes a lessee required by the terms of the lease to make permanent improvements on the leased premises.

In that case the owners executed a lease to S. H. Kress & Co. by the terms of which Kress agreed to construct a building on the property according to plans agreed upon at the time the lease was executed. Kress thereafter contracted with Hanson-Worden Co. to build the building. In the course of the work the contractor incurred debts which remained unpaid and for which lien claimants brought suit against the lessors. In the course of the opinion this Court said:

"Under subsection (a) of the first assignment, it is contended that there is no privity of contract between the owners of the land and the contractor and subcontractors. We do not think this contention can be sustained for the reason it clearly appears that in the

respective lease contracts entered into between the respective owners of the respective parcels of real estate, and S. H. Kress & Co. the matter of erecting the building on this property was not only consented to by the lessors, but it was clearly a part of the consideration for the lease contracts that this building should be erected, and the plans and specifications to be approved by the lessors. The bond required of the contractor made specific provisions for the protection of the lessors against lienable claims. This, we think, fixes privity between the owners as the lessors, and the contractor and subcontractors.

"The second assignment of error is accordingly overruled. However, before leaving this assignment we will say that we do not think that the case of Thomas & Turner v. Exposition Co., 137 Tenn. 1, 191 S.W. 348, is in point. In the present case, as before stated, the lease contract executed by the respective owners of the respective parcels to S. H. Kress & Co. made specific provision for the erection of this building, and the plans and specifications for the same to be approved by the lessor, as the owners of the property, and they not only had knowledge that the improvements would be made, but it was the chief consideration that this building would be erected, and at the termination of the lease the owners would receive the benefit of the improvement, and the improvements were accordingly made, not only by the consent of the owners, as the lessors in the respective leases, but in a sense, by their procurement, since they required the building to be erected according to certain specifications."

In addition to what was said in that case by way of distinguishing Thomas & Turner v. Exposition Co., here

relied upon by Sarbec, we observe that in that case the opinion places great emphasis upon the fact that furnishers were well aware that the corporation making the improvements did not own the land. Of greater significance, however, is the fact that the lease permitted but did not require the lessee to erect buildings on the leased premises and the action was based upon the statute permitting removal of improvements from the land under certain circumstances. The question whether a lessee may be termed an ''agent'' in the sense of the lien statute was not considered.

In Reed v. Estes, 113 Tenn. 200, 80 S.W. 1086, cited in Thomas & Turner v. Exposition Co., supra, and here relied upon by Sarbec, the lease permitted but did not require the lessee to make improvements. In denying a lien against the lessor's interest the Court said:

''The statute creating the lien claimed in this case (Shannon's Code, sec. 3531) confines it to cases where the contractor making the improvements has a special contract with the owner of the property upon which it is made or his agent.

''The facts of this case do not bring it within this statute. Complainant did not contract with the owner or her agent. By his contract with the lessees he did not become the creditor of Mrs. Estes, or acquire any lien upon her property. A lessee cannot, without special authority to do so, create an indebtedness against the lessor or incumber his property for improvements. The bill must fail to this extent.''

The foregoing Tennessee cases point up the distinction generally recognized between leases requiring the lessee to make improvements and those which merely permit

the lessee to make improvements at his option. The authorities generally hold that under the former the lien attaches; in the latter situation the lien does not attach.

"The lessor's interest on the other hand, may be subject to a mechanic's lien by reason of the lessee's contract where the lease contemplates the making of improvements by the lessee, especially where such improvements are a substantial benefit to the lessor, as well as where the lessee obligates himself to make improvements at his own expense. On a joint enterprise of the lessor and the lessee, a provision in the lease that the lessor's interest in the real estate on which the improvements are to be made shall be exempt from mechanics' liens is void. And so, if a lessee causes a building to be erected on leased premises, under an agreement between himself and the lessor that the former is to pay for the building, and the latter is to pay him therefor by allowing him to retain rents, the interest of both the lessor and lessee is subject to liens growing out of the erection of the building." 36 Am.Jur. p. 73, Section 93, Mechanics Liens. See also 57 C.J.S. Mechanics' Liens sec. 65, p. 563, 564.

On a similar construction of the term "agent" carried in the lien statute our cases hold, without exception, that under the terms of T.C.A. sec. 64-1102, a furnisher is entitled to a lien for materials furnished a purchaser under an executory contract of sale where the contract of sale requires the vendee to make improvements. See Rowland v. Lowe, 46 Tenn.App. 60, 326 S.W.2d 681 and cases cited. Such is the rule elsewhere. 36 Am.Jur. 72, Mechanics Lien, Section 90.

■ In this case, more than in the ordinary case, equity demands that the furnishers be decreed a lien on the freehold estate of Sarbec. As we have seen, Sarbec bore a part of the cost of the improvements in the reduction of rent during the first year thereby making the lessee its agent in the making of improvements. In addition, it reserved a measure of control over the buildings to be erected as well as bookkeeping methods, the rent was upon a fifty-fifty basis and, more importantly, the record shows without dispute that both Busch and Dr. Winston knew Creech had a record of beginning projects of this kind and then defaulting and that he was financially irresponsible. To sustain Sarbec's position under these circumstances would permit it to lay a trap for unwary and unsuspecting furnishers. We do not have here a case where the furnisher had actual knowledge of the provisions of the lease forbidding the creation of a lien for improvements made by the lessee. In our opinion constructive notice is not sufficient. To hold otherwise would for all practical purposes defeat the policy of the statute designed to protect third parties who become furnishers of labor and materials which inure to the benefit of the freehold.

The fifth assignment is sustained.

■ As to the fee allowed counsel, while the amount seems small, we can not say the Chancellor abused his discretion in allowing a fee of $600.00 for work done in the Chancery Court. However, a fee of the same amount will be allowed for services rendered on appeal.

Costs including costs of appeal are adjudged to Sarbec and the cause is remanded generally.

Cooper and Parrott, JJ., concur.

Addendum:

By previous order, Sarbec was denied the right to file assignments of error because not tendered within the time allowed but was permitted to file the supporting brief as a reply brief.

## ON PETITION TO REHEAR

McAMIS, P.J.:

Sarbec has filed a petition to rehear based in the main upon its contention that, since the lessee expended from its own funds prior to the fire more than $75,000.00, the amount required by the lease, no lien should be allowed for materials furnished in excess of that amount. De Klyn v. Gould et al., 165 N.Y. 282, 59 N.E. 95, is cited in support of this contention.

As pointed out in the reply brief, after the fire occurred the owner and the lessee mutually agreed the insurance fund would be used to reconstruct the building, as contemplated by the lease. The conclusion is inescapable that the owner knew the insurance fund of approximately $54,000.00 would not be sufficient to reconstruct the building according to then existing plans.

The amount of the unpaid lien claims is only $26,549.96. This amount will be reduced by the balance of the insurance fund still held in the registry of the court. The claims then remaining unpaid, added to the $54,-000.00 insurance fund, will not exceed the limitation of $75,000.00 contained in the lease. It results that even if this limitation should be held valid the unpaid lien claims for expenditures made after the fire should be sustained. All of the lien claims except that of Knox-Tenn in the amount of $407.05 were incurred after the fire.

Under our previous holding the provision of the lease *requiring* the lessee to make improvements and the agreement to reduce the rent for the first year made the lessee the "agent" of the owner in the sense of the statute, T.C.A. sec. 64-1102. At least in the absence of an express provision in the lease withholding from the lessee, as agent, the power to expend more than $75,000.00 we must hold that the owner cannot escape liability for the act of its agent for this claim of $407.05. For this additional reason the lien claims for materials furnished after the fire are held valid and enforceable against Sarbec. To repeat, all of the materials were furnished under "special contract," to use the language of the statute, with the owner's agent. For this reason, among others, De Klyn v. Gould et al, supra, is considered inapposite.

In this view of the case the question whether, generally, the fixing of an amount to be expended by the lessee limits lien claimants to the stipulated amount can be pretermitted.

The petition is denied.

Cooper and Parrott, JJ., concur.