# KALTHOFF, INC. v. SOUTHSIDE LEASING COMPANY, Inc., et al. No. 160.—477 S.W.2d 15

Eastern Section. July 19, 1971.

Rehearing Denied September 3, 1971.

Certiorari Denied by Supreme Court January 3, 1972.

Richard Stair, Sr., Knoxville, for appellant.

William H. Skelton, William N. Groover and Charles E. Rader, Knoxville, for appellees.

SANDERS, J. The Appellant has appealed from a decree of the Chancellor disallowing a mechanic's lien on the fee of real estate for improvements made under contract with the sublessee.

The parties will be referred to as Complainant, Kalthoff, Inc., and Defendants, Southside Leasing Company, Inc., Franchises, Inc., and Bulofield Enterprises, Inc., as they appeared in the trial court, or by name.

Defendant, Southside Leasing Company, Inc., is the owner of a tract of land located at the corner of West Cumberland Avenue and Mountcastle Street in the City of Knoxville. On July 17, 1968, the Defendant, Southside Leasing Company, leased the property to Defendant Franchises, Inc., for a period of 15 years. The rental for the first four months was to be $416.00 per month. The rental for the remaining 15-year period was to be five per cent of the gross sales made on the property, with a minimum rental of $833.33 per month for the first five years, $1,000.00 per month for the next five years, and $1,250.00 per month for the last five years, with the lessor having the privilege of auditing the books of the lessee.

The premises were to be used as a restaurant or could be used for any other lawful purpose with the lessor's consent.

A building, which had formerly been used as a service station, was located on the premises and the lessor

agreed to remove the gasoline from the underground storage tanks and fill them with water or remove them if so required by the city. As pertinent here, the lease also provided:

"7. Lessee may, at its expense, remove the older or front building now on the premises and up to approximately 20 feet of the new or rear building and use the materials therefrom, except as provided in Paragraph 9 hereinafter, for any additional construction or improvements. And Lessee shall have the further right to construct buildings and/or make additions and improvements necessary to the business to be conducted upon the premises.

"8. Lessee may additionally, at its option, add a second story to the new or rear building presently existing upon the demised premises providing said second story does not exceed the load limit per square foot of said building."

The lease also has a provision that it could be assigned with the consent of the lessor and, on November 1, 1969, the lease was assigned to the Defendant, Bulofield Enterprises, Inc.

In December, 1969, the Defender, Bulofield Enterprises, made a contract with the Complainant to install certain duct work, exhaust fans and make-up air system and later arranged for a heater to be installed in the make-up air system. The work was performed between December 15, 1969, and April 13, 1970, and the charges were $2,883.00.

The Complainant filed timely notice of a contractor's lien and brought this suit in the chancery court to impress a mechanic's lien on the fee of the real estate against the lessor and a lien on the leasehold interest of Franchises, Inc., and Bulofield Enterprises, Inc.

The case was tried by The Honorable Len G. Broughton, Jr., Chancellor, Part II, Knox Chancery, who filed a memorandum opinion and finding of fact in which he found the issues in favor of the Defendants, Southside Leasing Company and Franchises, Inc., but rendered a judgment in favor of the Complainant against Defendant Bulofield Enterprises, Inc., for $2,883.00.

Since Bulofield Enterprises, Inc., had surrendered its lease and gone out of business before the case was tried, no lien was impressed on its leasehold interest.

A decree was entered in keeping with the Chancellor's opinion, from which the Complainant has appealed and assigned error.

The Complainant's assignments of error are:

"1. The Court erred in denying complainant's lien when the lease instrument and the evidence showed that the lessee was required to make the improvements.

"2. The Court erred in denying complainant's lien when the lease instrument and the evidence showed that the lease instrument contemplated the making of improvements by the lessee which were a substantial benefit to the lessor."

Complainant seeks to impress a lien on the property under the provisions of sec. 64-1102, T.C.A., which in part is as follows:

"Lien for work and materials.—There shall be a lien upon any lot of ground or tract of land upon which a house or structure has been erected, demolished, altered, or repaired, or for fixtures or machinery furnished or erected, or improvements made, *by special contract with the owner or his agent. . . ."* (Emphasis ours.)

In dealing with this section of the Code, our courts have distinguished the cases which allow a lien to attach under a contract with a lessee from those which do not allow a lien to attach, the distinction being whether or not the agreement between the lessor and the lessee is such as to make the lessee the "agent" of the lessor in his contracts and whether the lease requires certain improvements to be made as against permission to make improvements.

The leading cases supporting the theory that a lien may attach to the freehold by virtue of a contract with the lessee and the ones relied on by the Plaintiffs are Variety Fire Door Co., et al., v. Hanson-Worden Co., 10 Tenn.App. 254 (1929) and Knox-Tenn. Rental Company v. Sarbec Corporation, 59 Tenn.App. 564, 442 S.W.2d 652 (1965).

In both of these cases the lease required extensive improvements to be made as a part of the consideration for the rent and in each case the lessor had the right to approve the plans and specifications.

The Fire Door case required the erection of a large store for S. H. Kress & Co. in downtown Memphis. It was contracted for in excess of $270,000.00. Concerning the question of privity of contract between the owners and contractors, the court said:

"Under subsection (a) of the first assignment, it is contended that there is no privity of contract shown between the owners of the land and the contractor and subcontractors. We do not think this contention can be sustained for the reason it clearly appears that in the respective lease contracts entered into between the respective owners of the respective parcels of real estate, and S. H. Kress & Co., the matter of erecting the building on this property by S. H. Kress & Co. was not only consented to by the lessors, but it was clearly a part of the consideration for the lease contracts that this building should be erected, and the plans and specifications to be approved by the lessors. The bond required of the contractor made specific provisions for the protection of the lessors against lienable claims. This, we think, fixes privity between the owners as the lessors, and the contractor and subcontractors."

In the Sarbec case the lessee agreed to expend $75,000.00 during the first year of the term equipping and remodeling the building and improving the grounds. In the Sarbec case the lease also provided, "In case of fire all such sums of money as shall be recovered or received, by virtue of such insurance shall, with all convenient speed, be applied, expended and paid out, under the direction of the Lessor and Lessee in rebuilding or restoring or repairing the said buildings and premises."

The court further said:

"In November, 1961, the building on the property was destroyed by fire as the result of which $54,000.00 from insurance came into the hands of Sarbec. After some disagreement arose as to the use of this money it was mutually agreed Sarbec would turn the entire sum over to James D. Turner, a bookkeeper in its employ, as escrow agent and the fund would be paid out on order of Willard Creech in the discharge of liens for labor and materials in restoring the building which had burned. This procedure was followed until April 19, 1962, when the last pay roll was met out of this fund. In the meantime, according to the testimony of Willard Creech, he had invested more than $50,000.00 of his own funds. The escrow fund on that date had been reduced to less than $10,000.00. The building was never completed and it appears without dispute that the amounts claimed by appellants for materials ordered by Creech and used on the premises are still outstanding and unpaid."

The court, in holding that the contractors were entitled to a lien on the property, said:

"In this case, more than in the ordinary case, equity demands that the furnishers be decreed a lien on the freehold estate of Sarbec. As we have seen, Sarbec bore a part of the cost of the improvements in the reduction of rent during the first year thereby making the lessee its agent in the making of improvements. In addition, it reserved a measure of control over the buildings to be erected as well as bookkeeping methods, the rent was upon a fifty-fifty basis and, more impor-

tantly, the record shows without dispute that both Busch and Dr. Winston knew Creech had a record of beginning projects of this kind and then defaulting and that he was financially irresponsible. To sustain Sarbec's position under these circumstances would permit it to lay a trap for unwary and unsuspecting furnishers. . . ."

The two leading cases which support the theory that a contract with the lessee does not impose a lien on the freehold and the cases which we think are controlling in this case are Thomas and Turner v. National Conservation Exposition Co., 137 Tenn. 1, 191 S.W. 348 and Reed v. Estes, 113 Tenn. 200, 80 S.W. 1086. In both of these cases there was no requirement for improvements to be made, but in each case the lessee was permitted to make improvements within its discretion.

In the Estes case the court said:

"The statute creating the lien claimed in this case (Shannon's Code, section 3531) confines it to cases where the contractor making the improvements has a special contract with the owner of the property upon which it is made or his agent.

"The facts of this case do not bring it within this statute. Complainant did not contract with the owner or her agent. By his contract with the lessees he did not become the creditor of Mrs. Estes, or acquire any lien upon her property. A lessee cannot, without special authority to do so, create an indebtedness against the lessor or incumber his property for improvements. The bill must fail to this extent."

In the case of Knox-Tenn. Rental Company v. Sarbec Corporation, *supra*, Judge McAmis, in commenting on the holdings of the courts in the above cases, said:

"The foregoing Tennessee cases point up the distinction generally recognized between leases requiring the lessee to make improvements and those which merely permit the lessee to make improvements at his option. The authorities generally hold that under the former the lien attaches; in the latter situation the lien does not attach."

In the case at bar there was no requirement that any improvements be made by the lessee. It was only permissive. We are unable to find privity of contract with the owner or his agent.

The assignments of error are overruled, the judgment of the trial court is affirmed and the Complainant is taxed with the cost of this appeal.

Cooper, P. J. (E.S.), and Parrott, J., concur.